Ames, C. J.
The information in this case was filed by the attorney-general by virtue of the inherent authority of his office : and not the less so, because it professes to have been filed on the relation of a military officer next in rank to, and subject to the orders of, the defendant. To prevent delay by protracting the pleadings, upon the appearance of the defendant, it was agreed, that the information should be so amended *6 as to set forth the facts upon which the government rely to impeach his title, so that he might demur to it, and bring the questions thereby raised, at once, to the consideration of the court. Although this course is certainly not regular, we have allowed it to be taken for the purpose of the speed made by saving two stages in the pleading.
It is very true that in cases in which a private relator moves, as he may, to be permitted to use the name of the state for the purpose of inquiring by what warrant an individual holds and exercises a public office, the motion is subject to the regulated discretion of the court. The necessity, the policy, of making the inquiry, and even the position and motives of the relator in proposing it, are all matters considered by the court, in the exercise of their discretion in granting such a motion; since a court of justice will not allow the name of the state to be used, and its own time to be occupied, improperly or unnecessarily, or merely to feed the grudge of a relator who has no interest in the matter of inquiry, to the disturbance of the public peace. The discretion to allow in such a case the filing of an information of this character, is, as we apprehend, all the discretion which courts of law can, with propriety, or do, exercise, and all that cases of authority justify. When the information is filed, all the discretionary power of the court is expended; and the issues of law or fact raised by the pleadings must be tried and decided, under the law, in the same manner, and with the sanie strictness, as in any other case, civil or criminal. We make these remarks, because a portion of the argument for the defendant seems to suppose, that the court has power to dispense with the law in a proceeding of this nature, and to exercise a discretion, whether it will notice an objection in law to the title of the defendant, when, though well founded, it is comparatively unimportant. We exercise, and wish to exercise, no such power; sitting here to obey and administer, and not to dispense with, or disregard the law, because in our view it is unnecessary or impolitic. However unimportant any one of its rules may seem to be, it is of the last importance that we should have no power to choose, whether we will, or will not, administer it.
It has been suggested that this court has no jurisdiction to *7 inquire into the title of a militia officer, at least when a commission has been granted to him; it being a military matter merely, for the action of courts-martial or courts of inquiry, or of the governor as commander-in-chief, under the provisions of our militia system. Undoubtedly many cases may be imagined calling in question the title of a militia officer, in which the court would, at the suit of a private relator, refuse to interfere when application was made to it for leave to file an information of this character; on account, it might be, of the exclusively military nature of the questions involved; especially when it considered, that if, by its judgment, it should oust the officer as not entitled, the general assembly, or the governor, as commander-in-chief, could at once reappoint him to the same office. In this case, however, the state has seen fit, through its representative, the attorney-general, to call upon us, as he had right, to inquire by what warrant the highest military subordinate in the state holds his office. He neither asked nor needed our allowance for the taking of this step ; and nothing but an actual defect of power to make the inquiry in this form of proceeding, can justify us in refusing to decide the questions thus brought before us.
The writ, or information in the nature of a writ of quo war-ranto, is in the nature of a writ of right, we are told, for the king or state, against him who claims or usurps any office, franchise, or liberty, to inquire by what authority he supports his claim, in order to determine the right; 3 Black. Com. 262; and it lies for usurping any office, whether created by charter of the crown alone, or by the crown with the consent of parliament, provided the office be of a public nature, and a substantive office, and not merely the function or employment of a deputy or servant, held at the will or pleasure of others. Darley v. Regina, (in Error,) 12 Cl. & Fin. 520. Now, however it may be with the military servants of the Queen of England, or with the officers of the armies of continental Europe under governments less free, it is clear that the major-generalship of the militia of this state is a substantive office in the above sense, under our system of law. It is public in its nature, giving the highest active military • command in the state, and carrying with it, especially in case of *8 war or insurrection, large powers. The incumbent is elected to it by the general assembly, in grand committee, — receives a commission under the seal of the state, required by the constitution to be signed and countersigned in the same manner that a civil commission is, — and before he enters upon the duties of his office, must, by law, take the same oath that every civil officer, chosen by the general assembly, must take.
He holds his office for the term of five years, and until another is appointed and qualified as his successor; and so far from holding it at the will or pleasure of any one, can only be deprived of it, against his will, upon charges duly preferred and proved to the satisfaction of a court-martial composed of his brother officers. In whatever nominal department of our government you choose to place him, whether in the executive or in a separate department, got between the constitution of the United States and of this state, as contended, and to be called, the Military department, he is, under the law, an officer — so styled in constitution and statute — of a free government, filling a public substantive office, with a stable, though appropriate tenure, and in no other sense is a servant of any one, than every officer under our system, is a servant of the state. The state has a right to know by what warrant one of its citizens presumes to exercise such an office; and when through its attorney-general it asks us, in this, the appropriate mode, to assist it in the inquiry, we can find no ground for declining to render it our aid. Even if the title of the incumbent of such an office were a proper subject of consideration and decision by a court-martial under the militia law, as has been contended, which we do not grant or stop to inquire into, our jurisdiction, vested as it is by the constitution, would not be ousted; and we can readily conceive that many questions affecting the title to a military office might arise, and, indeed, one such does arise in the case before us, far more appropriately to be decided by the highest court of the state, than by a court-martial. We are clear, upon principle, that this court has jurisdiction by quo warranto to inquire by what authority a person exercises the office of major-general of the militia of this state; and are supported in our judgment by the decision of the supreme court of New Jersey, and the dis *9 senting opinion of an able judge, Mr. Justice Richardson, of the court of appeals of South Carolina, State v. Utter, 2 Green, R. 84; State v. Wadkins, 1 Richard. Law R. 44.
The ground upon which we intend to rest our judgment with regard to the title of the defendant to his command as major-general, renders it unnecessary for us to consider what irregularities or deficient preliminaries of his election to it, are, or are ■ not, cured or concluded by his commission. The present and altered state of the law affecting such an election, renders unnecessary any decision upon the point relating to the defendant’s election, so ably discussed, as a rule for the future; and we do not deem it proper for one branch of the government unnecessarily to canvass the doings of another. We prefer to rest our judgment, when we are able to do so, upon some ground, which, whilst it avoids all such criticism, is in itself, and apparently to all, substantial, and which, supposing the defendant to have been duly elected to, and qualified to exercise, the duties of major-general, regards his warrant or right to continue to exercise it at the time of the filing of this information.
The information, in substance, avers that the defendant, since his supposed election and qualification as major-general, was, on the 27th day of April, 1857, elected colonel of the First Light Infantry Company of Providence, a chartered company of the active militia belonging to, and comprising a part of, the second brigade of the division of the militia of the state, — that his election was duly approved, — that a commission was thereupon issued to him as such colonel, dated June 1,1857, upon which, on the same day, he was sworn and qualified, and that ever since he has exercised the powers, and performed the duties, of colonel of such company; all which is admitted by the demurrer. The ground taken by the information and argued on the part of the state is, that the two offices, of major-general of a division and of the colonel of a company composing a part of a brigade of the same division, are incompatible offices, necessarily involving conflicting rights and duties; and that hence, the acceptance and exercise by the defendant of the latter office, subsequent to his election and qualification as major-general, is an implied resignation of his major-generalship. That the *10 acceptance by the same person, of an office incompatible with another office held by him, is a virtual resignation of the latter office, is well settled by the authorities noted upon the brief handed to us by the relator, as well as by other authorities, and proceeds upon the irresistible presumption, that no man can intend, as Well as upon the policy tliat no man will be permitted, to hold a trust, the duties of which he has disqualified himself from impartially performing, by the assumption of a new trust, involving inconsistent duties and liabilities; If this be the rule with regard to civil, it seems to us applicable with great force to military offices; in which, especially on emergent occasions, so much depends upon the prompt obedience, action, and example of each officer, in his appointed station. Nothing, surely, should be allowed to come between a soldier, of whatever rank, and the ready performance of his duty; nothing to weaken that due subordination of authority so necessary to military discipline. Whatever may be allowed in that respect under rules of foreign service, by special orders and dispensations issued in reward of military merit, our militia system certainly recognizes no pluralities of incompatible offices of the line, nor has the governor, as commander-in-chief, any authority, by commission or otherwise, to enable any officer to hold two or more such military offices. Are, then, the offices of a colonel of the line and of major-general of the division, to a brigade of which the regimental company of the colonel is by law inseparably attached, incompatible offices, so that the performance of the duties of either is endangered by the union of the two offices in the same person ? It is nothing to say that the defendant might or would, by his exemplary demeanor under all temptations and embarrassments, so conduct himself amid the conflict of duties in his two offices, as to “ be clear ” in both; and that the example of a major-general’s application 'of his time jso the details of the discipline of a company, would enforce in the strongest manner the importance of this great feature of military efficiency. The law is adapted not to individual and exceptional cases, but to human nature as it ordinarily exhibits itself; and it cannot afford to dispense with the welj-known guards of common policy for the chance of now and then stum *11 bling upon a bright example, or producing a startling effect. The question of incompatibility is to be determined from the nature of the duties of the two offices, and not from a possibility, or even a probability, that the defendant might duly perform the duties of both.
Now, looking at the duties of the two offices in question, the legal compatibility of the two is hardly an arguable position. For the same person to be commander and commanded, — to be superior and subordinate at the same time, — above his brigadier in one capacity, and below him in another, contradicts every notion of military authority and discipline, unless, as the argument for the defendant supposes, when acting in his higher capacity, he abandons his lower capacity, or vice versa; the admitted necessity for which is the strongest proof of the incompatibility of the two offices which can be imagined. Again, the only legal security that, when acting as colonel, the defendant will obey the orders of his brigadier, is wholly lost by this union of offices; since by the 70th section of the militia act of 1856, in force at the time when the defendant accepted his colonelcy, and by ch. 212, § 2, of the Revised Statutes, he alone, as major-general, could appoint, and designate the members of a court-martial on himself, as .colonel; the delinquent to call and constitute the court to try the question of his own delinquency!! As the law now stands, in order to check improper or inopportune resignations, it requires, that the resignation of a field officer should be approved, not only by his brigadier, but by the major-general; but as this latter check did not exist at the time when the defendant accepted his inferior command, we do not rest our judgment upon this ground. We have no choice but to declare, that the offices of major-general of the division, and of colonel of the First Light Infantry company of Providence, united in the defendant, are incompatible offices; and that upon his acceptance of the latter, he virtually resigned the former office.
Let judgment of. ouster from the office of major-general be entered up against the defendant; but, as there is no pretence of improper motives on his part, the nominal fine of ten cents only will be imposed upon him.